**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARIA CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-2354 |
| | § | |
| TYSON FOODS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The defendants, Tyson Foods, Inc. and Rudy Martinez (together, "Tyson"), moved for

summary judgment based on the election of the plaintiff, Maria Castillo, to participate in Tyson's

Workplace Injury Settlement Program (the "Settlement Program") and to accept benefits under that

program.  Tyson contends that Castillo waived her right to the relief she seeks in this case.  (Docket

Entry No. 29).  Castillo moved for additional time to conduct discovery before responding to the

summary-judgment motion, (Docket Entry Nos. 32, 33), which Tyson opposed, (Docket Entry No.

34).  The court granted Castillo's motion.  (Docket Entry No. 36).  After further discovery, Castillo

filed a motion opposing summary judgment, (Docket Entry No. 39), to which Tyson replied, (Docket

Entry No. 43).  Castillo also moved to strike an affidavit Tyson filed, (Docket Entry No. 40), which

Tyson opposed, (Docket Entry No. 42).

Based on the pleadings, the motions and responses, the parties' arguments and submissions,

and the applicable law, the court grants Tyson's motion for summary judgment, (Docket Entry No.

29), and denies Castillo's motion to strike the affidavit, (Docket Entry No. 40).  Final judgment is

entered by separate order.  The reasons are explained below.

1

## I.      The Undisputed Facts

Castillo was born in Mexico.  (Docket Entry No. 39, Ex. A at p. 3).  She has a sixth-grade education and cannot speak English.  (*Id.* at 5).  Castillo worked at a Tyson food-processing plant in Houston, Texas.  (*Id.* at 4).  Part of her job involved holding a nylon bag underneath a "dumper," a machine that deposits chicken into a vat for processing.  (*Id.* at 6).  On August 18, 2012, part of the machine fell on her hand and pulled it into the vat.  (*Id.* at 7–8).  Castillo's hand started bleeding. A nurse at the Tyson plant gave her pain medicine, and an off-site doctor x-rayed and treated her hand and prescribed medication.  (*Id.* at 7).  Castillo was assigned to light duty when she returned to work because of pain in her hand, arm, and shoulder.  (*Id.* at 7–9).

After the accident, Castillo opted to participate in Tyson's Workplace Injury and Settlement Program.  The Settlement Program is regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*  It "offers non-fringe, no-fault health, medical, surgical and hospital care benefits . . . for work-related, on-the-job injuries and illnesses."  (Docket Entry No. 29, Ex. A-2 at p. 40).  Castillo signed an acceptance-and-waiver form, reading, in pertinent part:

> WAIVER AND RELEASE: In exchange for eligibility for any Comprehensive Benefits under the Program, I HEREBY VOLUNTARILY **RELEASE, WAIVE, AND FOREVER GIVE UP ALL MY RIGHTS, CLAIMS AND CAUSES OF ACTION**, WHETHER NOW EXISTING OR ARISING IN THE FUTURE, THAT I MAY HAVE AGAINST THE COMPANY, TYSON FOODS, INC. AND THEIR PARENT, SUBSIDIARY AND AFFILIATED COMPANIES AND ALL OF THEIR OFFICERS, DIRECTORS, OWNERS, EMPLOYEES AND AGENTS THAT ARISE OUT OF OR ARE IN ANY WAY RELATED TO INJURIES (INCLUDING A SUBSEQUENT OR RESULTING DEATH) SUSTAINED IN THE COURSE AND SCOPE OF MY EMPLOYMENT WITH THE COMPANY.  **I EXPRESSLY UNDERSTAND THAT INCLUDED IN THE CLAIMS THAT I AM RELEASING, WAIVING AND GIVING UP ARE CLAIMS BASED ON NEGLIGENT OR GROSSLY NEGLIGENT ACTS OR OMISSIONS.**  BY ELECTING TO BE ELIGIBLE FOR ANY COMPREHENSIVE BENEFITS

> UNDER THE PROGRAM, I FULLY UNDERSTAND AND AGREE THAT ANY
> COMPREHENSIVE BENEFITS SHALL BE MY SOLE AND EXCLUSIVE
> REMEDY REGARDING MY INJURIES.  ANY DISPUTES ABOUT PROGRAM
> BENEFITS WILL BE RESOLVED THROUGH THE PROGRAM'S DISPUTE
> RESOLUTION PROCEDURES.

(Docket Entry No. 29, Ex. A-4 at p. 71–72) (emphasis in original).

The waiver was written in Spanish.  On September 5, 2012, Castillo signed the document.

(Docket Entry No. 29, Ex. A-3 at p. 68–69).  Jessica Salazar, a Tyson nurse, witnessed Castillo's

signature.  (*Id.* at p. 69).  Between August 2012 and March 2013, Tyson paid medical expenses

arising from Castillo's injury.  (Docket Entry No. 39, Ex. A at p. 10).

On June 25, 2014, Castillo sued in Harris County District Court, seeking damages for

Tyson's alleged negligence.  (Docket Entry No. 1, Ex. 1).  Tyson removed the case to federal court,

(*id.*), and filed an amended answer asserting waiver as an affirmative defense, (Docket Entry No.

21 at p. 6).  Following discovery, Tyson moved for summary judgment, (Docket Entry No. 29),

which Castillo opposed, (Docket Entry No. 39).  Castillo also moved to strike the affidavit of Jessica

Salazar, (Docket Entry No. 40), which Tyson opposed, (Docket Entry No. 42).  The arguments and

responses are analyzed below.

## II.     The Motion to Strike

### A.     The Legal Standard

"Prior to December 1, 2010, the proper method by which to attack an affidavit was by filing

a motion to strike."  *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512,

515 (5th Cir. 2012) (per curiam).  Under the 2010 amendments to the Federal Rules of Civil

Procedure, "[a] party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence." FED R. CIV. P. 56(c)(2).  "There is no

3

need to make a separate motion to strike." *Id.* Advisory Committee Notes.  The court construes the

motion to strike as an objection under Rule 56(c)(2).  *See Underwater Techs.*, 671 F.3d at 515.

"An affidavit or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant

is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).  "[T]he affiant must provide

the district court with sufficient information to allow the latter to conclude that the affiant's

assertions are indeed based on [personal] knowledge." *Meadaa v. K.A.P. Enters., LLC*, 756 F.3d

875, 881 (5th Cir. 2014).  "Evidence on summary judgment may be considered to the extent not

based on hearsay or other information excludable at trial." *Fowler v. Smith*, 68 F.3d 124, 126 (5th

Cir. 1995).  "On a motion for summary judgment, the district court should disregard only those

portions of an affidavit that are inadequate and consider the rest." *Akin v. Q-L Invs., Inc.*, 959 F.2d

521, 531 (5th Cir. 1992).

### B.    Analysis

Tyson submitted Jessica Salazar's affidavit and the exhibits with its motion for summary

judgment.  The affidavit states that on the day Castillo injured her hand, Salazar gave Castillo

Spanish-language copies of the Summary Plan Description[1] for the Settlement Program and the

acceptance-and-waiver form, "thoroughly explained" the waiver to her, and gave her an opportunity

to ask questions.  (Docket Entry No. 29, Ex. A at ¶¶ 3–4).  The affidavit states that Castillo signed

the waiver on September 5, 2012, (*id.* at ¶ 4), and that Castillo received $8,727.89 in medical

---

[1] "A summary plan description of any employee benefit plan [regulated under ERISA] shall be furnished to participants and beneficiaries[,] . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022(a).

benefits from the Settlement Program, (*id.* at ¶ 6).  The benefits ended in March 2013 after Castillo's doctor determined that she had "reached maximum medical improvement."  (*Id.*).  The affidavit includes seven exhibits.

### 1.    Whether the Affidavit Is a Sham

Castillo argues that the affidavit should be striken because it is "factually inaccurate and misleading," inconsistent with Salazar's deposition testimony, and therefore a sham affidaivt. (Docket Entry No. 40 at p. 6–7).  At her deposition, Salazar testified that she gave Castillo the waiver on August 19, 2012, not on August 18, as she stated in her affidavit.  (Docket Entry No. 40, Ex. A at p. 8).  Salazar stated in her affidavit that she personally gave Castillo the Summary Plan Description; at her deposition, Salazar testified that someone else gave Castillo that document.  (*Id.*). Salazar also testified that she incorrectly filled out two medical forms to show that Castillo's injury was on August 18, not August 19.  (*Id.* at p. 6–7).  Castillo argues that these inconsistencies are part of Salazar's "pattern and/or practice of untruthfulness."  Castillo also relies on evidence that Salazar received a reprimand from the Texas Board of Nursing in 2008 for falsifying documents.  (*Id.* at 10–18).

The record does not show that Salazar's affidavit is subject to striking under the sham-affidavit rule.  That rule "stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."  *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Id.* (quotation marks omitted).  Salazar's affidavit was not submitted by

the nonmoving party to "manufacture a dispute of fact merely to defeat a motion for summary judgment." *Id.*; *see also Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980) (the sham-affidavit rule is designed to prevent "a party's attempt to inject a factual dispute through a contradictory affidavit."). Tyson, the moving party, submitted the affidavit to support its summary-judgment motion. Salazar's affidavit is materially different from those striken in the cases Castillo cites. *Contra Yeager v. Bowlin*, 693 F.3d 1076, 1080–81 (9th Cir. 2012) (district court did not err in striking contradictory affidavit submitted by the nonmovant to sidestep summary judgment); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104–06 (2d Cir. 2011) (per curiam) (same). The record does not show that Salazar's affidavit should be striken under the sham-affidavit rule.

### 2.     Whether the Affidavit Is Based on Personal Knowledge

An affiant "must have had an opportunity to observe[] and must have actually observed the fact" testified to. FED. R. EVID. 602 Advisory Committee Notes (quotation marks omitted). Castillo does not specify which parts of Salazar's affidavit are outside her personal knowledge. The affidavit recounts Salazar's background and her job duties at Tyson, her interactions with Castillo, her discussion with Castillo about the waiver, and the notes she took documenting that discussion. (Docket Entry No. 29, Ex. A at ¶¶ 1–5). These topics are all within Salazar's personal knowledge.

The affidavit also states that in her job at Tyson, Salazar "routinely assist[ed] in the preparation and distribution of documents and information related to employee workplace injuries and the Tyson [Settlement Program]." (*Id.* at ¶ 2). The documents included records of payment for Castillo's medical expenses for her hand injury and the waivers Castillo signed for other on-the-job injuries. (*Id.* at ¶ 6–7). These topics are within Salazar's personal knowledge.

### 3.    Whether the Exhibits Are Inadmissible Hearsay

"Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial." *Fowler*, 68 F.3d at 126.  The exhibits are copies of the Summary Plan Description, in English and Spanish; copies of the acceptance-and-waiver form, in English and Spanish; Salazar's notes from September 5, 2012; and two waivers Castillo had signed following previous, unrelated injuries at the Tyson plant.

The Summary Plan Description and the acceptance-and-waiver form set out the Settlement Program's terms and constitute a contract.  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (a "core functional requirement [of ERISA is] that every employee benefit plan shall be established and maintained pursuant to a written instrument." (alteration omitted) (emphasis omitted) (quotation marks omitted)).  A contract is not hearsay.  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994).  These exhibits are competent summary-judgment evidence.[2]

### 4.    Whether the Affidavit Was Made in Bad Faith

Castillo argues that Salazar's affidavit is "replete with false statements" and should be striken because Tyson's counsel "failed to undertake reasonable efforts to ensure [its] accuracy." (Docket Entry No. 40 at p. 7).  Castillo identified two inconsistencies between Salazar's affidavit and her deposition testimony, but the record does not show that the affidavit is "replete with false statements."  Castillo has not pointed to evidence aside from the two inconsistencies showing that the affidavit was submitted in bad faith or that Tyson's counsel did not take steps to ensure its

---

[2]  Salazar's notes are not relied on in determining whether to grant summary judgment.  As a result, there is no need to discuss whether the notes are hearsay or, if so, whether they fall within the business-records exception to the hearsay rule.

accuracy.[3]

The relevant questions are whether the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).  Salazar's affidavit satisfies these requirements.  The motion to strike is denied.

## III.    The Motion for Summary Judgment

### A.        The Legal Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

---

[3] Castillo relies on *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992), a securities-fraud case. *Akin* is unavailing.  *Akin* does not stand for the proposition that a court may disregard an affidavit as incompetent summary-judgment evidence when the nonmovant asserts bad faith on the part of the affiant. The *Akin* court merely affirmed the district court's decision to grant summary judgment because the plaintiffs' affidavits did not show "actual reliance" on the defendant's misrepresentations, as required under Rule 10b-5. *Id.*

competent summary judgment proof that there is an issue of material fact warranting trial." *Id*. (quotation marks omitted); *see also Celotex*, 477 U.S. at 325.   Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).   "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).   "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694).   The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).   "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).   In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

**B.     Analysis**

Tyson argues that summary judgment should be granted on Castillo's negligence claim because Castillo waived her right to sue Tyson by participating in the Settlement Program.  Tyson has  the burden of proof on this affirmative defense.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The waiver defense is based on the Texas Workers' Compensation Act (the "Act"), TEX. LABOR CODE §§ 401 *et seq*.  If an employee works for an employer "that elects to subscribe to the Texas workers' compensation system," the Act "provides the employee's exclusive remedies" for any work-related injuries or death.  *Austin v. Kroger*, 465 S.W. 3d 193, 200 (Tex. 2015).  If an employer chooses not to subscribe to the compensation system, its employees may sue "to recover damages for personal injuries or death sustained by [the] employee in the course and scope of the employment."  TEX. LABOR CODE § 406.033(a).  In such a lawsuit, the Act deprives the nonsubscribing employer of the common-law defenses of contributory negligence, assumption of the risk, and the fellow-servant rule.  *Id.*  The parties do not dispute that Tyson is a nonsubscribing employer.

An employee may waive her right to sue a nonsubscribing employer under the Act.  The wavier is valid only if: (1) "the employee voluntarily enters into the waiver with knowledge of the waiver's effect"; (2) "the waiver is entered into not earlier than the 10th business day after the date of the initial report of injury"; (3) "the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor"; and (4) "the waiver is in a writing under which the true intent of the parties is specifically stated in the document."  TEX. LABOR CODE § 406.033(f)(1)–(4).  The waiver must be "conspicuous and appear on the face of the agreement." *Id.* § 406.033(g).  "To be conspicuous, the waiver provisions must appear in a type larger than the

type contained in the body of the agreement or in contrasting colors." *Id.*

### 1.    Whether the Waiver Was Knowing and Voluntary

The record shows that Salazar gave Castillo the Summary Plan Description and reviewed that document and the accompanying waiver-and-acceptance form with her.  (Docket Entry No. 29, Ex. A at ¶¶ 3–4).  Salazar gave Castillo a chance to ask questions, but Castillo had none.  (*Id.* at ¶ 4).  Castillo signed the waiver on September 5, 2012.  (Docket Entry No. 29, Ex. A-3 at p. 69).  "An employee who signs a waiver has presumptive knowledge of its contents and effect under Texas Labor Code § 406.033(f)."  *Hernandez v. Lasko Prods. Inc.*, No. 11-cv-1967-M, 2012 WL 4757898, at *3 (N.D. Tex. Oct. 5, 2012); *see also Walkup v. Tyson Foods, Inc.*, No. 13-cv-0150, 2014 WL 4798443, at *4 (N.D. Tex. Sept. 26, 2014) (same); *Gunn v. Baptist/St. Anthony's Health Network*, 405 S.W. 3d 239, 243 (Tex. App.—Amarillo 2013, no pet.) (same); *Lopez v. The Garbage Man, Inc.*, No. 12-08-00384-CV, 2011 WL 1259523, at *8 (Tex. App.—Tyler Mar. 31, 2011, no pet.) (same).

### 2.    Whether the Waiver Was Signed "Not Earlier than the 10th Business Day After the Date of the Initial Report of Injury"

The record shows that Castillo signed the waiver on September 5, 2012, more than 10 business days after reporting her injury.  (Docket Entry No. 29, Ex. A-3 at p. 69).

### 3.    Whether Castillo Received a Medical Evaluation from a Nonemergency Care Doctor Before Signing the Waiver

The record shows—and it is undisputed—that Castillo was evaluated by a nonemergency care doctor before signing the waiver.  (Docket Entry No. 29, Ex. C at p. 93).

### 4.    Whether the Waiver Specifies the True Intent of the Parties

The record shows that the waiver was in writing.  The document stated that Castillo waived

her right to sue in exchange for the benefits provided through Tyson's Settlement Program. Courts have found similar language sufficient. *See Lopez*, 2011 WL 1259523, at *19 (waiver using similar language was valid under § 406.033(f)(4)). The record also shows that Castillo received the benefit of the bargain. Tyson paid her injury-related medical expenses until March 2013. (Docket Entry No. 29, Ex. A at ¶ 6).

### 5. Whether the Waiver Is Conspicuous and on the Face of the Agreement

The waiver appears on the face of the agreement, in all capital letters. This is "a type larger than the type contained in the body of agreement." *Gunn*, 405 S.W. 3d at 245 ("We see no error in the trial court's implicit conclusion that the waiver paragraph, appearing in all capital letters, appears in a type larger than that of the rest of the agreement."); *Lopez*, 2011 WL 1259523, at *19 (same).

Tyson has made a prima facie showing that there is no genuine dispute as to the facts of the waiver defense. Castillo must "designate specific facts showing that there is a genuine issue for trial." *Nola Spice*, 783 F.3d at 536 (quotation marks omitted).

### C. Castillo's Response

Castillo argues that there is a genuine dispute of fact material to deciding whether the waiver is valid under the Texas Workers' Compensation Act and that the waiver is unconscionable and therefore unenforceable.

### 1. Statutory Validity

Castillo asserts that the record shows a fact dispute as to when she signed the waiver. She points to her deposition testimony stating that the date next to her signature was not in her handwriting. (Docket Entry No. 39, Ex. A at p. 9). Castillo also relies on inconsistencies between Salazar's affidavit and deposition testimony to conclude that Tyson's evidence about the date on

12

which Castillo signed the waiver "is unreliable and inconclusive." Because Tyson "cannot establish the element of timeliness," Castillo reasons, summary judgment should be denied. (Docket Entry No. 39 at p. 8).

Tyson has come forward with sufficient evidence to establish the elements of a waiver defense. Castillo has not pointed to specific facts in the record that, viewed in the light most favorable to her, would support a reasonable inference that she signed the waiver within 10 days of her injury. The inconsistencies between Salazar's affidavit and deposition testimony concern whether Salazar filled out medical forms on August 18 or August 19 and whether Salazar personally gave Castillo a copy of the Summary Plan Description. These inconsistencies do not involve when Castillo signed the waiver. There is no record evidence supporting an inference that the date on the waiver form is false. Castillo testified that the date was not in her handwriting, but she did not testify that the date was wrong.

Castillo has raised questions about Salazar's credibility, suggesting that Salazar might have falsified the date. But "[a] party may not defeat a properly supported motion for summary judgment merely by raising generalized questions as to the credibility of the movant's affiants." *Robinson v. Cheney*, 876 F.2d 152, 162 (D.C. Cir. 1989). On summary judgment, a court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The record does not show that the waiver was signed on any date other than September 5. There is no genuine dispute of material fact as to when Castillo signed the waiver.[4] "Conclusional

---

[4] Castillo argues that there is also a genuine dispute of material fact as to whether the waiver states the true intent of the parties and whether the waiver provisions were conspicuous and on the face of the agreement. (Docket Entry No. 39 at p. 14–15). These arguments lack factual and legal support.

allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

### 2.    Contractual Validity

Castillo also argues that the waiver is unconscionable and therefore unenforceable, precluding summary judgment in Tyson's favor.  *See Ski River Dev., Inc. v. McCalla*, 167 S.W. 3d 121, 135 (Tex. App.—Waco 2005, pet. denied).  "Unconscionability . . . is not easily defined." *Venture Cotton Coop. v. Freeman*, 435 S.W. 3d 222, 228 (Tex. 2014).  "Proof of unconscionability begins with two broad questions: (1) the procedural aspect, *i.e.*, how did the parties arrive at the terms in controversy; and (2) the substantive aspect, *i.e.*, are there legitimate commercial reasons justifying the terms of the contract."  *McCalla*, 167 S.W. 3d at 136.  "Under Texas law, the party asserting unconscionability of a contract bears the burden of proving *both* procedural and substantive unconscionability."  *Id.* (emphasis in original).

### a.    Procedural Unconscionability

Procedural unconscionability focuses on the "bargaining position between the parties at the time the agreement was made."  *Id.*  "Gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms."  *Id.*  A bargaining process may be unconscionable when (1) "the stronger party [knows] that the weaker party will be unable to receive substantial benefits from the contract," and (2) "the stronger party [knows] that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement."

14

*Id.*  In short, "the circumstances surrounding the negotiations must be shocking." *Id.*

Castillo argues that the waiver was procedurally unconscionable because it was a contract of adhesion, but "adhesion contracts are not *per se* unconscionable." *In re Palm Harbor Homes, Inc.*, 195 S.W. 3d 672, 678 (Tex. 2006). Castillo argues that Tyson's superior bargaining power allowed it to "take advantage of injured, undereducated, low wage workers" like her. (Docket Entry No. 39 at p. 11). She contends that Salazar "demand[ed]" she sign the waiver, improperly leveraging "the trust and special relationship presumed between a health care provider and her patient" to coerce Castillo's signature. Castillo cites to Salazar's deposition testimony, but it does not support this argument. Salazar testified that when she first saw Castillo, she "presented" the documents about her injury and that Castillo reported to Salazar every day so that the nurse could monitor the wound. (Docket Entry No. 39, Ex. B at p. 16, 18). This testimony, viewed in the light most favorable to Castillo, does not show that Salazar coerced or manipulated Castillo into signing the form.

Castillo also argues that her lack of education made the waiver incomprehensible. It included technical legal terms, and no one at Tyson advised her to seek a lawyer to help her understand it. (Docket Entry No. 39 at p. 11). The record shows that Castillo was given a Spanish-language copy of the Summary Plan Description and that Salazar explained the Settlement Program and gave Castillo an opportunity to ask questions. The record also shows that Castillo had twice before agreed to participate in Tyson's Settlement Program. (Docket Entry No. 29, Ex. A-6, A-7).

"The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position. Unconscionability principles

are applied to prevent unfair surprise or oppression." *Palm Harbor Homes*, 195 S.W. 3d at 679. Castillo has neither submitted nor identified summary-judgment evidence indicating unfair surprise or oppression.  The record shows that Castillo had signed an acceptance-and-waiver form before, that she was advised of the terms of the Settlement Program, and that she received benefits from Tyson for her injury.  Castillo has not shown that "the circumstances surrounding the negotiations [were] shocking." *McCalla*, 167 S.W. 3d at 136.  Procedural unconscionability does not make the waiver unenforceable.

### b.    Substantive Unconscionability

Castillo also argues that the waiver was substantively unconscionable because Tyson compensated her only for the hand injury but not the shoulder injury, and Tyson did not give her notice of, or an opportunity to appeal, this denial of benefits.  Castillo alleges that Tyson stymied her counsel's efforts to obtain her claim file and that nurses refused to provide Castillo with forms to make a claim for her shoulder injury.  She also alleges that Tyson provided no notice before terminating her medical benefits.  Castillo finally argues that the Settlement Program's procedures and accompanying forms are not published or readily accessible, leaving individual employees at the mercy of Tyson's discretion to administer the plan as it chooses.  (Docket Entry No. 39 at p. 11–14).

These arguments are based on Tyson's alleged failure to comply with ERISA.  Castillo cites Texas state contract law, but it does not govern; the federal common law of ERISA does.  *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444 & n.3 (5th Cir. 2005).  ERISA provides the mechanism to challenge the allegedly improper administration of the Settlement Program. *See generally* 29 U.S.C. § 1132 (ERISA civil enforcement provision).  "Congress clearly expressed an intent that the civil

16

enforcement provisions of ERISA . . . be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987). "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54. Castillo has not cited Fifth Circuit cases applying unconscionability under the federal common law of ERISA as a defense against enforcement of a benefit plan's terms.[5] Even if substantive unconscionability under Texas state law gave Castillo a basis to challenge the administration of the Settlement Program under ERISA because the Fifth Circuit recognized a concept of unconscionability in the federal common law of ERISA, the summary-judgment evidence does not show that the waiver form is invalid or unenforceable on that basis.

## IV.    Conclusion

The court grants Tyson's motion for summary judgment, (Docket Entry No. 29), and denies Castillo's motion to strike, (Docket Entry No. 40). Final judgment is separately entered.

SIGNED on October 15, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[5]  The Seventh Circuit has suggested, in dicta, that "[t]he federal common law of ERISA may include a concept of unconscionability," even while recognizing that "[n]o case says that." *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 655 (7th Cir. 2001) (Posner, J.).